Filed 10/6/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re ARI S., a Person Coming Under the Juvenile Court Law.<br>_____<br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KRISSY S.,<br><br>Defendant and Appellant. | B307714, B311334<br><br>(Los Angeles County Super. Ct. No. 20CCJP03596A) |

APPEAL from orders of the Superior Court of Los Angeles County, Sabina A. Helton and Stacy Wiese, Judges. Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

Krissy S., the mother of Ari S., challenges the juvenile court's assumption of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("the Act"). She asserts Montana, not California, has jurisdiction. We affirm because California has significant connections jurisdiction under Family Code section 3421, subdivision (a)(2). Undesignated statutory citations are to the Welfare and Institutions Code.

I

The mother has three adoptive children: Serenity (born in 1993), Genesis (born in approximately 2002), and Ari (born in 2013). Ari is the only child at issue in this case. Serenity is Ari's biological parent. The mother adopted Serenity in Nevada through an adult adoption when Serenity was pregnant with Ari. When Ari was six months old, the mother adopted Ari in Nevada.

The mother, Ari, and Genesis traveled and lived in a van. The timeline of the family's whereabouts is indistinct. Most record dates come from the family's involvement with child protective services agencies in different locations. We refer to the Los Angeles County agency as the Department.

The family was in Montana in the beginning of 2019 when Montana's child protective services agency removed Ari and Genesis from the mother's care. We have few details about this removal. A Montana social worker spoke with a Washington state social worker, who told the Department this removal was because the mother neglected Ari and physically abused Genesis. A Montana court placed the children with their maternal grandparents but later returned them to the mother.

The mother and the two children traveled to California. In March 2019 and September 2019, the San Luis Obispo County child protective services agency received referrals about them.

In spring 2020, the three stayed in Washington state with Ari's godmother, Linda K., for a month and a half. During that stay, the mother wanted to board up Linda K.'s windows and turn off the utilities because the mother believed "Christ was going to send fire from heaven in the form of a cross." The mother predicted this would happen on May 27, 2020.

After leaving Linda K.'s home, the three lived in the van in Washington. At the end of May 2020, the Washington child protective services agency began investigating the mother. An investigating social worker from Washington was concerned about the mother's mental health but the family left the state before she could gather much evidence. The social worker believed the family's many moves had made it difficult to protect Ari.

The mother has had long-standing mental health issues that recently have become more severe. The mother has delusions. She believes King Louis V is her father and Donald Trump, Michelle Obama, and Queen Elizabeth communicate with her through satellites. She thinks the world is going to end and she told this to Ari, which frightened him.

Ari said the mother smokes marijuana "a lot." She has smoked in the van with Ari inside. "Sometimes, I can't handle the smoke. I hold my breath." "Sometimes, I suck that in and breathe it in when my mom breathes it out."

Genesis said the mother once closed her eyes and drove the van into a ditch with Ari inside. The mother said someone was talking to her through a satellite and was controlling her hands.

Genesis and Ari did not attend school and the mother lied about homeschooling them. The mother physically abused Genesis and sometimes spanked Ari.

On June 4, 2020, Genesis reported the mother to police in Franklin, California because the mother said Ari was "being raped by a Saudi Arabian satellite."

As of June 17, 2020, the family was in San Bernardino County. Someone referred them to that county's child protective services agency alleging that the mother punched Genesis, that the mother said someone was controlling the mother's mind, and that the mother did not feed Ari. The county deemed this referral inconclusive: it could not find the family.

The mother, representing herself, filed a lawsuit in federal district court in California on June 25, 2020. She listed a California address in the filings. The complaint says Donald Trump made the mother the "current elected citizen president" and the mother's grandmother is Queen Elizabeth. One page is styled as a handwritten declaration from Ari. It says, "Ari 6 years old American Citizen First Military Survivor on Soil" and, "My name is Ari. So um judge okay so the people here are doing bad things to my mommy."

On July 3, 2020, the mother and Ari stayed at a hotel in Downey, California. The mother contacted police because she believed she heard someone make a bomb threat. Police arrived. The mother removed some of her clothing and defecated on herself. Police placed her under a psychiatric hold. A social worker interviewed Ari. The Department filed a section 300 petition.

The mother told the Department the family had been at Dana Point before being in Downey and she had planned to go to Laguna Beach next. The mother said she had no family in California but she also said she lived in Niland, California with Genesis. The mother owned 10 acres of property in Newberry

4

Springs, California. A family friend corroborated that the mother owned property in Southern California.

On July 10, 2020, the court held a detention hearing. The court asserted temporary jurisdiction because of potential issues under the Act. It ordered Ari detained from the mother and ordered monitored visitation.

At a hearing on July 29, 2020, the court followed up about the Act. Court staff contacted an assistant attorney general in Washington. The court also spoke to a judicial assistant to a Washington judge. These sources identified no open cases involving Ari in Washington state. Washington was not asserting jurisdiction under the Act. A minute order states the court found California was Ari's home state and the court had jurisdiction.

The mother did not object. Nor did she assert Montana had jurisdiction.

The Department filed an amended section 300 petition on September 3, 2020.

On September 8, 2020, the court held a jurisdiction and disposition hearing. The mother asked the court to dismiss the petition for lack of evidence.

The court sustained allegations involving the mother's mental health and secondhand marijuana smoke. It removed Ari from the mother and ordered reunification services.

The court held a six-month status review hearing on March 9, 2021. The court found continued jurisdiction under section 300 was necessary. The court maintained Ari's placement, continued reunification services, and ordered a psychiatric evaluation of the mother. The mother did not object under the Act.

## II

California has jurisdiction under the Act.

The mother appealed the juvenile court's jurisdiction and disposition orders based on lack of jurisdiction under the Act (case no. B307714). She later appealed the six-month review orders on the same ground (case no. B311334). On our own motion, we consolidated the cases for oral argument and decision. The parties waived oral argument.

We review the Act and its purposes and then explain why California has jurisdiction.

The Act provides a framework to address custody issues across states. Nearly every state has enacted it. (*In re J.W.* (2020) 53 Cal.App.5th 347, 355 (*J.W.*).)

The Act has four ways for a target state to gain jurisdiction.

First is home state jurisdiction. (Fam. Code, § 3421, subd. (a)(1).) A state is the child's home state if the child lived there with a parent for at least six consecutive months immediately before the beginning of the child custody proceeding. (Fam. Code, § 3402, subd. (g).)

Second is significant connections jurisdiction. This applies if no state has home state jurisdiction, or if the home state declines to exercise jurisdiction because the target state is a more appropriate forum, the child and at least one parent have a significant connection with the state, and substantial evidence is available in the target state "concerning the child's care, protection, training, and personal relationships." (Fam. Code, § 3421, subd. (a)(2).)

The third basis for jurisdiction arises if all courts having jurisdiction under the first two grounds have declined to exercise

6

jurisdiction because a court of the target state is the more appropriate forum.  (Fam. Code, § 3421, subd. (a)(3).)

Fourth is if no court of any state would have jurisdiction under the first three grounds.  (Fam. Code, § 3421, subd. (a)(4).)

The Act has several aims in the context of dependency proceedings:  "avoiding jurisdictional competition and conflict, promoting interstate cooperation, litigating custody or visitation where the child and family have the closest connections, avoiding relitigation of another state's custody or visitation decisions, and promoting exchange of information and other mutual assistance between courts of sister states."  (*In re M.M.* (2015) 240 Cal.App.4th 703, 715.)

This case raises an issue of forfeiture.  The mother did not make a claim about Montana's jurisdiction in the juvenile court.  The Department urges us to apply *J.W.*, which held the Act does not govern fundamental jurisdiction, and therefore a party forfeits a challenge under the Act by raising it for the first time on appeal.  (*J.W.*, *supra*, 53 Cal.App.5th at pp. 357–358.)  The mother insists *J.W.* was wrongly decided.  We unanimously agree California has jurisdiction under the Act, so we need not and do not reach the issue of forfeiture.

We review jurisdictional findings under the Act for substantial evidence.  (*In re A.C.* (2017) 13 Cal.App.5th 661, 669 (*A.C.*).)  We independently review the juvenile court's statutory interpretation and its determination of jurisdictional facts based on undisputed evidence.  (*Id.* at p. 670.)

We are concerned with the jurisdictional facts at the time the dependency proceedings began, so we consider the circumstances in July 2020.  (See *A.C.*, *supra*, 13 Cal.App.5th at p. 668.)

California has the second kind of jurisdiction, which is significant connections jurisdiction. (See Fam. Code, § 3421, subd. (a)(2).) The mother concedes Ari has no home state. Substantial evidence supports the remaining requirements for this jurisdictional basis.

The mother and Ari have significant connections to California and substantial evidence is available in California concerning Ari's care, protection, training, and personal relationships. (Fam. Code, § 3421, subd. (a)(2)(A) & (B).)

Beginning over a year before the proceedings began, the mother and Ari lived in various parts of the state: San Luis Obispo County in March and September of 2019, Franklin in early June 2020, and San Bernardino County in mid-June 2020. When the proceedings began, the mother's stated intent was to continue traveling within California with Ari. The mother's land ownership and litigation in the state also demonstrate her connections to California.

The several referrals about the family within the state provide evidence of Ari's care and protection. Genesis, who had extensive information about Ari, lived in California when the proceedings began, according to the mother.

Ample information showed the mother's and Ari's significant connections to California and the availability of evidence about Ari in California.

## DISPOSITION

We affirm.

WILEY, J.

We concur:

STRATTON, Acting P. J.

OHTA, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.